IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| URIEL MARTINEZ | : | No. 17-468-1 |

**MEMORANDUM**

PRATTER, J.                                                          AUGUST 15, 2022

Uriel Martinez seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that he is at serious risk of harm from the COVID-19 virus. But Mr. Martinez's medical conditions do not rise to the level of an "extraordinary and compelling" reason for his early release. Therefore, the Court denies his motion.

### BACKGROUND

#### I. Mr. Martinez's Motion for Compassionate Release

Mr. Martinez was charged by information with a single count of bank fraud in violation of 18 U.S.C. § 1844. This was based on Mr. Martinez's role in a scheme of obtaining bank loans from Mayfair Federal Credit Union under false pretenses, first for car loans from a used car dealership in Philadelphia where he was employed between 2009 and 2012 and then for personal and automobile loans after he relocated to Florida.

As to the first scheme, Mr. Martinez accomplished this by presenting false information about customers accompanied by false supporting documentation. In addition, Mr. Martinez falsely inflated the price of the car on the loan application. Certain unindicted coconspirators working at the bank approved the applications without checking the value of the vehicle; the proceeds of these loans were disbursed via checks payable to the dealerships.

1

Once Mr. Martinez moved to Florida, he continued to submit paperwork from the car dealership as part of this scheme. While in Florida, Mr. Martinez also developed another scheme with two others ("Person 1" and "Person 2") whereby they recruited people living in the bank's charter area to give Mr. Martinez and the two others personal information. Mr. Martinez and Person 1 created the entities "A&U Multiservices" and "A&M Multiservices" in Florida that generated false credit reports for the recruited individuals in Philadelphia, which were then used in their loan applications. Using that personal information and false underlying paperwork, Mr. Martinez sent the applications to Person 2 who delivered them to the bank. The bank coconspirators approved the loan applications, and the money was disbursed to Mr. Martinez's account at the bank. Mr. Martinez then paid Person 1 and Person 2 from his account at the bank. As loans came due, Mr. Martinez directed Person 1 and Person 2 to pay the most delinquent loans using the proceeds from other more recent disbursements. In total, Mr. Martinez's conduct resulted in a total loss of $3,832,983.27. This also led to the bank's collapse after an accounting review in October 2013.

After Mr. Martinez pled guilty, the Court sentenced Mr. Martinez to 54 months of imprisonment, four years of supervised release, restitution of $2,528,433.77, and a $100 special assessment. As of the time of his motion, Mr. Martinez was serving his sentence at the Federal Correctional Institute at Oakdale ("FCI Oakdale I"). He had served approximately 24 months of his sentence and had good time credit for another two months, for a total time served of approximately 26 months. His expected release date is now June 24, 2023, and he is presently in the custody of the Residential Reentry Management Office of Orlando.

Mr. Martinez reports that he suffers from heart disease, hypertension, and diabetes, which put him at high risk of developing a severe COVID-19 infection. In addition, Mr. Martinez claims that FCI Oakdale's response to COVID-19 was insufficient, placing him at greater risk.

## II.   The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons (November 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 9, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an incoming inmate tests positive or presents symptoms, the BOP immediately medically isolates that inmate, while incoming inmates who are asymptomatic and negative are placed in quarantine for at least 14 days. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates. *COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 9, 2022). At the time Mr. Martinez filed his motion, he was imprisoned at FCI Oakdale, which houses 895 total inmates. *FCI Oakdale I*, Bureau of Prisons, https://www.bop.gov/locations/institutions/oak/ (last visited Aug. 9, 2022). As of August 2022, there had been 663 inmates that had recovered and 102 staff members who had recovered from COVID-19, seven inmates had died of COVID-19, and there are presently three reported active inmate cases of COVID-19 and no reported staff cases of COVID-19 at FCI Oakdale I. Tbl. *FCI Oakdale I*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 9, 2022).

3

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court.[1] 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1), *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[2] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553(a), to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

---

[1] Mr. Martinez has properly exhausted his administrative remedies. An inmate may only move for compassionate release in the sentencing court after making a request to the Bureau of Prisons and after giving the BOP 30 days to respond to that request. *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). Mr. Martinez requested release from the warden on January 2, 2022, and, after receiving no response, he filed his motion with this Court on February 11, 2022. Doc. No. 32, at ECF 1, 9. Thus, Mr. Martinez met both requirements. *See United States v. Mendoza*, No. 06-cr-167, 2021 WL 268897, at *2 (W.D. Pa. Jan. 27, 2021) (collecting cases). Plus, the Government concedes that Mr. Martinez has met the administrative exhaustion requirement. Doc. No. 35, at 6 n.1.

[2] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

4

DISCUSSION

I. **Mr. Martinez Has Not Presented an "Extraordinary and Compelling" Reason for his Early Release**

Mr. Martinez presents two reasons why the Court should grant him compassionate release: (1) his medical conditions that place him at increased risk of becoming severely ill from a COVID-19 infection, and (2) FCI Oakdale I's inadequate response to the COVID-19 pandemic. The Government opposes Mr. Martinez's motion. The Court concludes that neither of Mr. Martinez's asserted reasons is "extraordinary and compelling" and, thus, denies his motion.

A. **Mr. Martinez's Medical Conditions Are Not an "Extraordinary and Compelling" Reason for Early Release**

In order to demonstrate an "extraordinary and compelling" reason sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). Mr. Martinez, however, does not have any serious physical or medical condition that diminishes his ability to care for himself while in prison, even given the risk of a COVID-19 infection.

Mr. Martinez's medical record notes that he has hypertension, hyperlipidemia, type 2 diabetes, a vitamin D deficiency, and a history of heart disease. It is true that Mr. Martinez's hypertension and type 2 diabetes "may" make him "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 9, 2022). But Mr. Martinez does not argue that he is unable to care for himself or any of these conditions while in prison. His medical records demonstrate that he is able to control all of his conditions with medication. Moreover, his medical records do not

5

reflect that he is otherwise unable to care for himself or that he has any restrictions. In addition, Mr. Martinez received the Pfizer COVID-19 vaccine on July 13, 2021, and his second dose on August 4, 2021. Thus, this is not a reason for the Court to grant him compassionate release. *Cf. United States v. Waters*, No. 12-cr-295-2, 2022 WL 874943, at *3 (E.D. Pa. Mar. 23, 2022).

Indeed, the Pfizer vaccine, which Mr. Martinez received, has been documented as highly effective against COVID-19 and identified variants. *See, e.g., CDC COVID-19 Study Shows mRNA Vaccines Reduce Risk of Infection by 91 Percent for Fully Vaccinated People*, Centers for Disease Control & Prevention (June 7, 2021), https://www.cdc.gov/media/releases/2021/p0607-mrna-reduce-risks.html (last visited Aug. 9, 2022). The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021). Besides, a generalized fear of being infected with COVID-19 is also not a basis for compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that the "possibility" that the virus "may spread to" a person in a prison "cannot independently justify compassionate release").

### B. Mr. Martinez's Claim that FCI Oakdale's COVID-19 Response Was Insufficient Is Not an "Extraordinary and Compelling" Reason for Early Release

In addition, Mr. Martinez asserts that FCI Oakdale's COVID-19 response was "shoddy" and "lack[adaisical]," "akin to watching the Three St[oo]ges dress an octopus." Doc. No. 32, at ECF 5. He asserts that the system was "illogical and [K]afkaesque." *Id.* Literary and film references aside, an inmate's claim that specific facility's response to COVID-19 is inadequate does not constitute an "extraordinary and compelling" reason for his release. Instead, such a claim is more properly an unconstitutional conditions of confinement claim, for which 42 U.S.C. § 1983 is the proper vehicle. *See Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002) (explaining that a challenge to a condition of confinement "is a challenge properly brought under § 1983");

6

*Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008). Thus, Mr. Martinez's allegations that the COVID-19 response at SCI Oakdale (where he is no longer housed) is inadequate do not provide a reason to reduce his sentence or grant him early release.

## II. The Sentencing Factors Also Counsel Against Mr. Martinez's Release

Even if Mr. Martinez had demonstrated an extraordinary and compelling reason for his release, which he has not, the Court must still consider the sentencing factors set out in the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a). Mr. Martinez argues that he is not a danger to the community. While this is one factor the Court may consider, that factor alone is not dispositive. 18 U.S.C. § 3553(a)(2)(C). Instead, the Court must consider them all. *Id.* § 3553(a).

Here, the Court finds that the sentencing factors, too, counsel against an early release. Mr. Martinez's sentence of 54 months reflects the seriousness of his offense. 18 U.S.C. § 3553(a)(2)(A). Mr. Martinez helped to execute a large bank fraud scheme that, all told, resulted in a loss of almost $4 million. Considering the long-running nature of his scheme and the overall detriment to the community, his imprisonment also affords deterrence, both general and specific, against future fraudulent criminal conduct. *Id.* § 3553(a)(2)(B).

### CONCLUSION

For the foregoing reasons, the Court denies Mr. Martinez's motion for compassionate release. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE